FILED
2009 Sep-22  AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **SHARON KNIGHT**, ) | |
| ) | |
| **Plaintiff**, ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 08-BE-2116-M** |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of the Social**, ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On October 18, 2005, the claimant, Sharon Knight, filed for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI of the Social Security Act. (R. 52). The claimant alleges disability commencing on October 18, 2005 because of constant pain and depression. *Id.* The Commissioner denied the claim both initially and on reconsideration. *Id.* The claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ), and the ALJ held a hearing on November 28, 2007. (R. 302). In a decision dated March 20, 2008, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and thus, was ineligible for supplemental security income. (R. 16). On September 8, 2008, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 6). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, the decision of the Commissioner will be

reversed and remanded.

## II. ISSUE PRESENTED

The claimant presents the following two issues for review: whether the ALJ had good cause for discounting the assessments made by the claimant's treating physician and whether the ALJ properly applied the Eleventh Circuit's three-part pain standard.[1]

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in the evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look

---

[1] Because the first two issues on appeal are meritorious, the court does not need to address the third issue regarding the claimant's mental difficulties.

only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal on of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and give, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R.§§ 404.1520, 416.920.

The Commissioner must accord the opinions of the treating physician substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  Absent a showing of *good cause* to the contrary, the Commissioner cannot discount the treating physician's opinion. *Id.*  "Good cause" is a fairly broad standard and the Eleventh Circuit has recognized its existence in at least three sets of circumstances.  The first circumstance exists where the opinion of the

treating physician is accompanied by no objective medical evidence, is wholly conclusory, or is contradicted by the physician's own treatment notes. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The second circumstance exists where the "treating physician's opinion was not bolstered by the evidence." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Finally, the ALJ can find good cause to discount the treating source opinion where the "evidence supported a contrary finding" from the treating source. *Id.*; *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("ALJ may reject any medical opinion if the evidence supports a contrary finding"); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

However, where medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the Commissioner cannot discount the treating doctor's opinion. *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1986). If the ALJ decides to discount the opinion of the treating physician, he must "clearly articulate" his reasons for doing so. *Phillips*, 357 F.3d at 1241. The ALJ must make clear the weight accorded to each item of evidence and the reasons for the decision so that the reviewing court may determine whether the decision is based on substantial evidence. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)

(emphasis added). If the Commissioner decides not to credit such testimony, he must discredit it explicitly, and articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## V. FACTS

The claimant graduated from high school and was forty-five years old at the time of the administrative hearing. (R.307, 311). Her past work experience includes employment as a cashier, receptionist, phlebotomist, medical transporter, hospital housekeeper, sales person, and a fast food worker. (R. 312-13). The claimant's previous employer reported that she "always reported to work on time and was able to maintain an ordinary work routine without supervision; that she did not require regular frequent breaks; that she was able to understand and carry out simple instructions; that she was able to maintain attention and concentration for extended periods; that she was able to make simple work related decisions; that she was able to maintain socially appropriate behavior and grooming;" and that "she was able to respond appropriately to normal stresses involved in carrying out assigned tasks." (R. 21-22). The claimant alleged she was unable to work because of constant pain from her fibromyalgia. (R. 52).

### *Physical Limitations*

On November 23, 2004, the claimant was seen at Northeast Orthopedic Clinic because she was complaining of pain all over her body. (R. 177). Dr. Prince's initial impression was that the claimant suffered from fibromyalgia and chronic pain symdrome. (R. 178). Dr. Prince proceeded to perform a "complete workup" of tests on the claimant. (R. 176).The tests revealed multiple fibromyalgia trigger points. *Id.* On November 30, 2004, the claimant returned to

5

Northeast Orthopedic Clinic and Dr. Prince diagnosed her with fibromyalgia syndrome and chronic pain syndrome. (R. 176).

On January 11, 2005, Dr. O. H. Conner began seeing the claimant on a monthly basis for pain management. (R. 105). She was taking Lortab 7.5 at the time of the initial visit. (R. 130). The claimant returned on January 25, 2005, complaining of pain at a level of 8 out of 10. (R. 127). Dr. Conner diagnosed the claimant with complex regional pain syndrome of her left upper extremity, osteoarthritis, left rotator cuff tendonitis, myofascial pain syndrome, adhesive capsultitis, mechanical cervical spine pain, mechanical thoracic spine pain and mechanical low back pain. (R. 128). Dr. Conner treated the claimant with Lortab 7.5, Ambien and Klonopin. (R. 128). Dr. Conner prescribed Ambien for the claimant because she complained that her pain affected her sleeping and she could only sleep 3-4 hours at a night. (R. 127, 130)  On February 22, 2005, the claimant returned to Dr. Conner and rated her pain at a level of 9 out of 10. (R. 125). On March 29, 2005, claimant rated her pain at a level of 10 out of 10. (R. 123).  On April 28, 2005, an exam revealed tenderness to palpation from C-2 to the coccyx and right rhomboid muscle. (R. 122).  On June 6, 2005, the claimant reported her pain medications were not working and rated her pain level at a 10 out of 10. (R. 118).  On August 4, 2005, the claimant again saw Dr. Conner and rated her pain at a level of 8 out of 10. (R. 115).  Dr. Conner performed a physical examination that revealed "tenderness to palpitation over the entire left upper extremity and from C-3 to C-7 and L-2 to the sacrum along with corresponding paraspinal muscles, upper lower trapezius, rhomboids, anterior and posterior, glutei, greater trochanter and the middle aspect of the knees, bilaterally." *Id.*

On September 2, 2005, Dr. Conner performed a physical examination on the claimant that

continued to reveal multiple tenderness spots. (R. 112). The claimant also rated her pain at a level of 7 out of 10. *Id.* On October 3, 2005, the claimant continued to report that she continued to experience high levels of pain and that her medications were not helping. (R. 110). On November 1, 2005, the claimant rated her pain at a level of 8 out of 10 and reported that the pain was constant. (R. 108). On November 30, 2005, the claimant rated her pain at a level of 10 out of 10. (R. 106). The claimant complained that she had pain all over her body, that she was only sleeping 3-4 hours a night, and that her pain medications were not working as well as before. *Id.* The last recorded visit to Dr. Conner was December 5, 2006, when the claimant rated her pain at a level of 9 out of 10 and described the pain as stabbing, burning and sharp. (R. 295). The claimant continued to take the pain medications throughout the entirety of her medical care under Dr. Conner.

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 25).  At the hearing, the claimant testified that she was in constant pain, had trouble walking, and could not sit or lie down for a long period of time. (R. 315). The claimant also testified that she was suffering from depression. *Id.*

The claimant testified that she worked at Riverview Regional Medical Center for ten years but left work because she "couldn't go up and down the stairs" and that she "couldn't keep up anymore." (R. 312-13).  She also testified that she has not been to the hospital or emergency room or seen a doctor in the year prior to the hearing. (R. 313-14).  The claimant testified that she had not sought medical assistance because she could not afford it. (R. 314).  The claimant

testified that she takes over-the-counter medication but does not take any prescription medication. (R. 314).

A vocational expert, Dr. Kessler, testified concerning the type and availability of jobs that the claimant was able to perform. (R. 315-18).  Dr. Kessler testified that the claimant's job as a receptionist would transfer to other similar clerical types of jobs at a sedentary or light level. (R. 316). Dr. Kessler further testified that the "general clerical types" of skills the claimant had attained would be transferable to other work but that those skills "would not transfer to anything like a clerk typist or anything of that kind." (R. 316-17).

Dr. Kessler testified that the claimant would not be able to perform any of her past work if the ALJ concluded that the claimant was only capable of performing work at a sedentary level with the following limitations: that she would need a sit/stand option, that she would be precluded from repetitive overhead reaching or lifting, and that she be limited to non-complex job tasks. (R. 317).  The ALJ then asked Dr. Kessler to identify any other jobs that the claimant could perform given the constraints and to give any representative examples.  *Id.*  Dr. Kessler replied that most of the jobs she could perform in the future would be considered sedentary at an un-skilled level, such as a general clerk, receptionist, or a cashier. *Id.*  Dr. Kessler then stated that if she found the claimant's testimony to be fully credible, she would not be able to return to her past work or perform any other work; "the levels of pain that she reported would preclude any type of work because they would distract her from being able to complete tasks and she would not be able to keep up with the pace of work." (R. 317-18).

*The ALJ's Decision*

On March 20, 2008, the ALJ issued a decision finding the claimant was not disabled

under the Social Security Act. (R. 16). First, the ALJ found that the claimant meets the insured status requirements of the Social Security Act through December 31, 2009. (R. 18). Next, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of her disability. *Id.* Finally, the ALJ found that the claimant's depression/anxiety, cervical disc bulge,[2] and fibromyalgia qualified as severe impairments; he concluded, however, that these impairments did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 18-19).

The ALJ also considered the claimant's subjective allegations of pain to determine whether she had the residual functional capacity to perform past relevant work. (R. 22). The ALJ relied heavily on the testimony of Dr. Kessler in making the determination that the claimant could not perform past relevant work. *Id.* Additionally, the ALJ considered whether the claimant had the residual functional capacity to perform sedentary work if a sit/stand option were available, if she would not be required to engage in repetitive overhead lifting, and if the tasks were non-complex. (R. 19-20). The ALJ found that the claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (R. 20).

To support his conclusion, the ALJ first noted that even though the claimant had been

---

[2]The ALJ discussed a cervical disc bulge in his opinion, but the record contains no mention of a cervical disc bulge in. The ALJ cited to exhibits 13F and 15F; however, exhibit 13F is missing from the record because it was actually for another case and should not have been included. Exhibit 15F does not mention a cervical disc bulge.

diagnosed with fibromyalgia, "scarce objective evidence [exists] to support this diagnosis." (R. 20). The ALJ found that the evidence did not satisfy the American College of Rheumatology criteria for fibromyalgia because "there is no documentation of a 4 kilogram force eliciting pain for the specific number of locations for trigger points." *Id.*  The ALJ further points out that the claimant testified that she slept to relieve her pain and characterized this testimony as inconsistent with her allegations of insomnia. *Id.*

The ALJ found that the claimant suffers from impairments that produce "mild to moderate pain at the most." (R. 21). The claimant's previous employer reported that she "always reported to work on time and was able to maintain an ordinary work routine without supervision; that she did not require regular frequent breaks; that she was able to understand and carry out simple instructions; that she was able to maintain attention and concentration for extended periods; that she was able to make simple work related decisions; that she was able to maintain socially appropriate behavior and grooming;" and that "she was able to respond appropriately to normal stresses involved in carrying out assigned tasks." (R. 21-22). Based on these findings, the testimony of the vocational expert, and the inconsistent testimony of the claimant, the ALJ concluded that the claimant has the residual functional capacity to perform sedentary work if a sit/stand option was available, if she would not be required to engage in repetitive overhead lifting, and if the tasks were non-complex. (R. 22).

## VI. DISCUSSION

**A. Issue I – Discounting a treating physician's opinion.**

The first issue is whether the ALJ had good cause for discounting the assessments made by the claimant's treating physician. The law in this circuit is well established that the

Commissioner must accord the opinions of the treating physician substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Absent a showing of *good cause* to the contrary, the Commissioner cannot discount the treating physician's opinion. *Id.* "Good cause" is a fairly broad standard and the Eleventh Circuit has recognized its existence in at least three sets of circumstances. The first circumstance exists where the opinion of the treating physician is accompanied by no objective medical evidence, is wholly conclusory, or is contradicted by the physician's own treatment notes. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The second circumstance exists where the "treating physician's opinion was not bolstered by the evidence." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Finally, the ALJ can find good cause to discount the treating source opinion where the "evidence supported a contrary finding" from the treating source. *Id.*; *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("ALJ may reject any medical opinion if the evidence supports a contrary finding"); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

However, where medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the Commissioner cannot discount the treating doctor's opinion. *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1986). If the ALJ decides to discount the opinion of the treating physician, he must "clearly articulate" his reasons for doing so. *Phillips*, 357 F.3d at 1241. The ALJ must make clear the weight accorded to each item of evidence and the reasons for the decision so that the reviewing court may determine whether the decision is based on substantial evidence. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The ALJ rejected the assessments made by Dr. Conner. Dr. Conner diagnosed the claimant with complex regional pain syndrome of her left upper extremity, osteoarthritis, left rotator cuff tendonitis, myofascial pain syndrome, adhesive capsultitis, mechanical cervical spine pain, mechanical thoracic spine pain and mechanical low back pain. (R. 128). Widespread pain over the entire body, especially in the head, neck, shoulders, and lower back, is the most common symptom of fibromyalgia. *See* http://www.mayoclinic.com/health/fibromyalgia/DS00079; http://www.fmnetnews.com/basics-symptoms.php. Dr. Conner saw the claimant on a monthly basis from January 11, 2005 through November 30, 2005 and qualifies as a treating physician. Dr. Conner treated the claimant with Lortab 7.5, Ambien and Klonopin. (R. 128). Dr. Conner's diagnoses and treatment plan are consistent with claimant's assertion of severe pain.

The ALJ attempts to contradict the assessments made by an examining physician who saw the claimant twice before she began her treatment with Dr. Conner. The ALJ cites an Orthopedist who supposedly found that the claimant's symptoms were "not physiological at all." (R. 21). However, the record does not support the ALJ's characterization of the orthopedist's findings. The Orthopedist in question, Dr. Prince, saw the patient on November 23, 2004, where his initial impression was that the claimant suffered from fibromyalgia and chronic pain symdrome. (R. 178). Dr. Prince proceeded to perform a "complete workup" of tests on the claimant that confirmed a diagnosis of fibromyalgia. (R. 176). No where in the record does Dr. Prince ever say that the claimant's symptoms were "not physiological at all." The ALJ states that "scarce objective evidence" exists to support a diagnosis of fibromyalgia. (R. 20). This court disagrees. The claimant's diagnosis of fibromyalgia is based on medical testing and is supported by the findings of multiple doctors. The ALJ's opinion that the claimant does not have

12

fibromyalgia has no support from a physician; the ALJ has failed to cite a single doctor who supports his opinion or who disagrees with any of the assessments made by Dr. Conner or Dr. Prince. The ALJ has failed to show substantial evidence that supports his decision and discounts the assessments made by the treating physician.

**B. Issue II – Pain Standard**

The second issue is whether the ALJ properly applied the Eleventh Circuit's three-part pain standard. In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added).

In the instant case, the claimant does suffer from the underlying medical condition of fibromyalgia. Dr. Prince saw the claimant on November 23, 2004 and his initial assessment was that the claimant suffered from fibromyalgia. (R. 178). After doing a "complete workup" of tests, Dr. Prince's diagnosis of fibromyalgia was confirmed. (R. 176). The claimant has also shown objective medical evidence that confirms the severity of her alleged pain. The ALJ has not shown good cause for discounting the assessments made by the claimant's treating physician. Dr. Conner found the claimant's pain to be credible and diagnosed her with a wide variety of pain ailments. (R. 128). Dr. Conner treated the claimant for pain relief for nearly a year and continually prescribed numerous pain medications for the claimant. (R. 115, 126, 128, 134). The objective medical evidence confirms the severity of the claimant's pain. Therefore, the ALJ did

not properly apply the Eleventh Circuit's three-part pain standard.

Finally, the ALJ states that the claimant is not credible because of inconsistent statements she made regarding her insomnia. *Id.* The claimant stated her pain limited her ability to sleep but also stated that she slept to relieve her pain. *Id.* These statements are not necessarily inconsistent and surely are not enough to discredit the claimant's allegations of pain. Often times people who have trouble sleeping because of pain will take medication that can help that person sleep through the pain and get rest. In the instant case, medical records reflect that the claimant was taking Ambien to help her sleep, as well as pain medication, which records support her claims of both insomnia and pain.

The ALJ has failed to show substantial evidence to support his decision to discount the assessments made by the treating physician. The ALJ has not produced any doctors who support any of his opinions nor has he produced any doctors who disagree with any of the assessments made by the claimant's treating physician. Furthermore, Dr. Prince's diagnosis of fibromyalgia supports Dr. Conner's assessments. Therefore, the ALJ erred as a matter of law in rejecting the assessment of the claimant's treating physician and in failing to properly apply the Eleventh Circuit's three-part pain standard.

## VII. CONCLUSION

For the reasons as stated, the court finds that the ALJ failed to show good cause for rejecting the opinions of the claimant's treating physician and for not properly applying the Eleventh Circuits thee-part pain standard. Accordingly, substantial evidence does not support his decision. Therefore, the court will reverse the Commissioner's decision and will remand it for the ALJ to determine whether the claimant is entitled to Disability Insurance Benefits or

Supplemental Security Income Payments.

The court will enter a separate Order.

DONE and ORDERED this the 22nd day of September 2009.

                                                      _____
                                                    KARON OWEN BOWDRE
                                                    UNITED STATES DISTRICT JUDGE